

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-07-00112-CR

_____


JOHNNIE LYNN PARDUE, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 54th Judicial District Court
McLennan County, Texas
Trial Court No. 2006-359-C2


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

O P I N I O N

Johnnie Lynn Pardue appeals her conviction by a jury for engaging in organized criminal activity.

This conviction arose due to gambling activities. Pardue operated J.J.'s Game Room,[1] a business in Lacy Lakeview, Texas, which featured gaming devices commonly known as "eight-liners." In 2003, after the Texas Supreme Court issued its opinion in *Hardy v. State*, 102 S.W.3d 123 (Tex. 2003), the office of the district attorney of McLennan County[2] issued a letter of advisement to the "Owners, Operators and Patrons of Establishments Wherein Eight-Liners are Played"; this letter provided the information that gambling is a criminal offense in Texas unless the payout for winning is "non-cash merchandise prizes, toys, or novelties." A copy of this letter was delivered to Pardue by representatives of the City of Lacy Lakeview Police Department. Although J.J.'s intermittently ceased operations at several points in time, during her period of operation of the business, Pardue continued to pay winners in cash, even after receipt of the letter issued by the office of the district attorney. In 2005, the Police Department of Lacy Lakeview, in cooperation with an undercover officer from the Police Department of Woodway, Texas, conducted an undercover investigation of the operations carried on at J.J.'s. Based on evidence obtained during the undercover

_____

[1]J.J.'s Game Room was previously known as J.J.J.'s Game Room or Triple J's.

[2]This case was transferred to our Court pursuant to the docket equalization program.

2

investigation, the Lacy Lakeview Police Department raided J.J.'s pursuant to a search warrant, arrested Pardue, and seized ninety-three eight-liner machines.

Pardue was indicted for a single count of engaging in organized criminal activity, to which she pled not guilty. A jury found Pardue guilty, assessed punishment at two years' imprisonment, and recommended the sentence be probated. The trial court sentenced Pardue consistent with the jury's assessment and placed Pardue on five years of community supervision. At the conclusion of the sentencing hearing, the State requested the trial court to rule on its motion for forfeiture. The trial court ordered the ninety-three eight-liner machines be forfeited, but orally ordered the State to preserve the machines until "the appeal is exhausted."

Pardue raises seven issues on appeal. First, Pardue argues that the trial court erred in holding a hearing on the State's motion for forfeiture of the machines and entering an order of forfeiture prior to Pardue's conviction having become final. In Pardue's second, third, fourth, and fifth points of error, Pardue argues that the trial court erred in admitting the advisory letter issued by the district attorney of McLennan County mentioned above. Finally, in her sixth and seventh points of error, Pardue argues that the evidence is legally and factually insufficient to sustain her conviction.

## I.    Overview of the Law

In Texas, as a general rule and subject to a few narrow exceptions, gambling is prohibited. *See* TEX. CONST. art. III, § 47; TEX. PENAL CODE ANN. §§ 47.01–.14 (Vernon 2003); *see also Hardy*, 102 S.W.3d at 130. The Texas Penal Code provides:

(a)  A person commits an offense if he:

     (1)  makes a bet on the partial or final result of a game or contest or on the performance of a participant in a game or contest;

     (2)  makes a bet on the result of any political nomination, appointment, or election or on the degree of success of any nominee, appointee, or candidate; or

     (3)  plays and bets for money or other thing of value at any game played with cards, dice, balls, or any other gambling device.

TEX. PENAL CODE ANN. § 47.02(a).  The Texas Penal Code provides a number of defenses to a charge of gambling.  If "(1) the actor engaged in gambling in a private place; (2) no person received any economic benefit other than personal winnings; and (3) except for the advantage of skill or luck, the risks of losing and the chances of winning were the same for all participants," the person accused of gambling has a defense to prosecution.  TEX. PENAL CODE ANN. § 47.02(b).  In addition to this defense, the Texas Penal Code also includes defenses for certain forms of gambling such as bingo, charitable raffles, the state lottery, horse racing, greyhound racing, and "participation in a drawing for the opportunity to participate in a hunting, fishing, or other recreational event conducted by the Parks and Wildlife Department." *See* TEX. PENAL CODE ANN. § 47.02(e); *see also* TEX. OCC. CODE ANN. §§ 2001.001–.657 (Vernon 2004), §§ 2002.001–.058 (Vernon 2004 & Supp. 2007); TEX. REV. CIV. STAT. ANN. art. 179e (Vernon Supp. 2007).

The only defense relevant in this case is that contained in subsection (e) of Section 47.02. Subsection (e), which provides that: "It is a defense to prosecution under this section that a person played for something of value other than money using an electronic, electromechanical, or mechanical contrivance excluded from the definition of 'gambling device' under Section

4

47.01(4)(B)." TEX. PENAL CODE ANN. § 47.02(e). The Texas Penal Code defines "gambling device"

as follows:

> (4)    "Gambling device" means any electronic, electromechanical, or mechanical contrivance not excluded under Paragraph (B) that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance.  The term:
>
> > (A) includes, but is not limited to, gambling device versions of bingo, keno, blackjack, lottery, roulette, video poker, or similar electronic, electromechanical, or mechanical games, or facsimiles thereof, that operate by chance or partially so, that as a result of the play or operation of the game award credits or free games, and that record the number of free games or credits so awarded and the cancellation or removal of the free games or credits;  and
> >
> > (B) does not include any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.

TEX. PENAL CODE ANN. § 47.01(4).

Pardue was charged with engaging in organized criminal activity.  The Texas Penal Code

provides, in pertinent part, as follows:

> (a)  A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, he commits or conspires to commit one or more of the following:
>
> > . . . .

5

(2)  any gambling offense punishable as a Class A misdemeanor;

. . . .

TEX. PENAL CODE ANN. § 71.02 (Vernon Supp. 2007). The State alleged that Pardue "intentionally or knowingly operate[d] or participate[d] in the earnings of a gambling place . . . with the intent to establish, maintain, or participate in a combination or in the profits of a combination . . . ." Thus, the underlying offense of the organized criminal activity charge alleged by the State was gambling promotion. A person commits the offense of gambling promotion by "intentionally or knowingly" operating or participating in the earnings of a "gambling place." TEX. PENAL CODE ANN. § 47.03. The Texas Penal Code defines gambling place as "any real estate, building, room, tent, vehicle, boat, or other property whatsoever, one of the uses of which is the making or settling of bets, bookmaking, or the conducting of a lottery or the playing of gambling devices." TEX. PENAL CODE ANN. § 47.01(3). A combination is defined as "three or more persons who collaborate in carrying on criminal activities . . . ." TEX. PENAL CODE ANN. § 71.01(a) (Vernon 2003).

## II.    The Forfeiture

The Texas Code of Criminal Procedure provides several methods by which a court can order contraband to be forfeited. *See* TEX. CODE CRIM. PROC. ANN. arts. 59.01–.14 (Vernon 2006 & Supp. 2007); *see also* TEX. CODE CRIM. PROC. ANN. art. 18.18 (Vernon Supp. 2007). Article 18.18 contains two alternative methods of forfeiture which are independent of any procedures under Chapter 59. *See* TEX. CODE CRIM. PROC. ANN. arts. 18.18, 59; *see also Burnom v. State*, 55 S.W.3d

6

752, 754 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Following a final conviction for certain specifically enumerated offenses, gambling devices and other contraband are subject to forfeiture under Article 18.18(a). *See* TEX. CODE CRIM. PROC. ANN. art. 18.18(a). When there is no prosecution or conviction for the specific enumerated offenses contained in Article 18.18(a), Article 18.18(b) provides a procedure for forfeiture. *See* TEX. CODE CRIM. PROC. ANN. art. 18.18(b); *see also State v. Dugar*, 553 S.W.2d 102, 103 (Tex. 1977); *Burnom*, 55 S.W.3d at 753. Pardue argues on appeal that her conviction was not final and that a final conviction is necessary to forfeiture. We also note that while the State presented evidence that Pardue possessed gambling devices, Pardue was not convicted of one of the specific offenses contained in Article 18.18(a) as giving rise under it to forfeiture. Texas law is clear that the defendant must be convicted of one of the enumerated offenses of Article 18.18(a) as a predicate to generate the state's remedy of forfeiture. *Dugar*, 553 S.W.2d at 103; *Twenty-Nine (29) Gambling Devices v. State*, 110 S.W.3d 146, 150 (Tex. App.—Amarillo 2003, no pet.); *Burnom*, 55 S.W.3d at 753. Although the State initially argued the trial court did not err in ordering a forfeiture under Article 18.18(a), the State withdrew its opposition after this Court requested supplemental briefing from both parties but prior to oral argument. Therefore, we vacate the trial court's order of forfeiture.[3]

---

[3]This vacatur should not be interpreted as precluding forfeiture of the gambling devices under an alternative procedure, provided the State can meet the requirements for forfeiture and any other requirements imposed by law.

7

**III.    The Trial Court Did Not Err in Admitting the Letter Issued by the District Attorney**

During its direct examination of the Lacy Lakeview Police Chief Dennis Stapleton, the State offered into evidence a copy of the advisory letter issued by the McLennan County district attorney's office which had been delivered to Pardue. Pardue objected that the letter was hearsay and that it was an interpretation of the law which did not originate from the trial court. The State responded that the letter was not being introduced for the truth of the matter asserted, but rather to show the requisite intent of Pardue. The State argued that the letter established that Pardue had notice that her activities may have been illegal. The trial court sustained Pardue's objection and did not admit the letter at that point in the trial.

However, on redirect, the State tendered the letter once again, arguing that Stapleton had been attacked on cross-examination concerning the purposes for his investigation and "for the purposes of showing his understanding of the law as well as the Defendant's." Pardue renewed her prior objections, but the trial court admitted the letter into evidence. Pardue requested no limiting instruction.

**A.    No Abuse of Discretion in Admitting the Letter for a Limited Purpose**

Hearsay is an unsworn, out-of-court statement offered at trial for the truth of the matter asserted in the statement. TEX. R. EVID. 801(d). Under the Texas Rules of Evidence, the "'Matter asserted' includes any matter explicitly asserted, and any matter implied by a statement, if the probative value of the statement as offered flows from the declarant's belief as to the matter." TEX.

8

R. EVID. 801(c); *see Mosley v. State*, 141 S.W.3d 816, 830 (Tex. App.—Texarkana 2004, pet. ref'd). "Hearsay is not admissible except as provided by statute or these rules or by other rules prescribed pursuant to statutory authority." TEX. R. EVID. 802. The State argues that the letter was not hearsay because it was not admitted for the purpose of establishing the law of Texas, but rather it was admitted to show that Pardue had notice that her business might be illegal and that she made a conscious decision to continue her activities despite that knowledge.

Pardue argues the reasons offered by the State (i.e., to show the law was clear to Stapleton and to demonstrate that Pardue had knowledge of the law) do not remove the letter from the definition of hearsay because the reasons require the letter to be an accurate representation of the law. The admission or exclusion of evidence is a matter within the discretion of the trial court. *Dixon v. State*, 940 S.W.2d 192, 197 (Tex. App.—San Antonio 1996, no pet.). We will reverse the trial court's determination only when its decision is "so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992). Although Stapleton's understanding of the law is irrelevant under the circumstances of this case, the fact that Pardue had notice that her activities might be illegal is relevant. "[I]n order to prove the defendant's intent to participate in a combination, the State must prove not only that the defendant knew of the existence of the combination, but also that the defendant knew of the criminal activity of the group." *Rodriguez v. State*, 90 S.W.3d 340, 354 (Tex. App.—El Paso 2001, pet. ref'd). Whether the letter is an accurate statement of the law is secondary to the importance of the fact that

9

Pardue received the letter, read it, understood it, and chose to continue her activities in disregard of it. In essence, the jury eventually found that this conduct was unlawful. She, even after having been fully informed of the opinion of the McClennan County district attorney regarding the unlawfulness of the conduct, consciously continued to follow that course of action. The letter is evidence of Pardue's specific intent to participate in a combination involved in criminal activity. Pardue's conscious decision to continue to operate the business is not dependent on the truth of the letter. The trial court's decision to admit the letter into evidence is within the zone of reasonable disagreement; accordingly, the trial court did not abuse its discretion in concluding that the letter was admissible for a limited purpose.

### B.     Pardue Failed to Preserve Error by Failing to Request a Limiting Instruction

When evidence is admissible for one purpose only, but not for another purpose, "the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." TEX. R. EVID. 105(a). A party opposing the introduction of evidence that is admissible only for a limited purpose has the burden of objecting and requesting a limiting instruction when the evidence is proffered. *Hammock v. State*, 46 S.W.3d 889, 893 (Tex. Crim. App. 2001); *Arana v. State*, 1 S.W.3d 824 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). If evidence admissible for a limited purpose is admitted and no limiting instruction is requested, the evidence is admitted for all purposes. *Hammock*, 46 S.W.3d at 895. In the absence of a request for a limiting instruction, the court's action in admitting evidence without such an instruction cannot be raised on appeal. *See* TEX. R. EVID.

10

105(a). Because Pardue failed to request a limiting instruction, Pardue cannot now, on appeal, complain about the admission of the letter for all purposes.

### C.     The State's Use of the Letter Did Not Violate Due Process

Pardue claims the State "thrust [the letter] before the jury as the unquestionable law of the land." According to Pardue, the letter pervaded the entire trial and became a constant feature of the State's case. According to Pardue, such use violated her right to due process. The State argues that Pardue failed to preserve this argument by not referencing due process or any constitutional provision at trial. Pardue did object on the basis that the letter was an interpretation of law from a party other than the trial court. The general rule for presenting a complaint for appellate review is a showing in the record (1) that the complaint was made to the trial court by a request, objection, or motion that was timely and sufficiently specific to make the trial court aware of the grounds of the complaint and (2) that the trial court ruled adversely (or refused to rule, despite objection). TEX. R. APP. P. 33.1. Although Pardue failed to employ the magic words "due process" in her objection at trial, Pardue's objection was sufficient to make the trial court aware of the nature of the complaint and Pardue secured an adverse ruling. Error, if any, is therefore preserved for appellate review.

"It is axiomatic that the court should instruct the jury on the law, and not anyone else." *Powers v. State*, 737 S.W.2d 53, 54 (Tex. App.—San Antonio 1987, pet. ref'd). Be that as it may, the State did not use the letter to usurp the trial court's role. Pardue only directs this court to three places in the record wherein the State allegedly represented the letter was a correct statement of the

11

law. The first two of those was during redirect examination of two witnesses; the State used the letter to question Willie Kelly and Diana Gamboa, customers of J.J.'s, who had each testified that they thought the law was not clear concerning whether the games at J.J.'s were illegal. The State did not represent the letter as the law of Texas, but, rather, asked both witnesses whether the letter was clear. In the third instance, Pardue directs this Court to the State's reference to the letter as a correct statement of the law in its closing argument. The State argued:

> This page that was talked about, the letter from the District Attorney, it doesn't say that it was a felony or a misdemeanor. It just says you've got to stop. The District Attorney in this county sent out a letter saying this is a crime. You can't pay cash. You can't give gift certificates. . . . You can't even get playbacks. Those are illegal. That's the law.

The State did not pervasively use the letter as a surrogate interpretation of Texas law. In the twelve-volume reporter's record, the State implied on two occasions it was a correct statement of the law; in only one occasion (during final jury argument) did it represent that the warning letter was a correct statement of the law. We, therefore, determine from the record that the use was far from pervasive.

In *Powers*, the trial court permitted the prosecutor to read the law of parties to the jury. *Id*. This case is clearly distinguishable from *Powers*. Here, the State did not expressly represent the letter as a correct statement of the law until closing argument—after the trial court had instructed the jury as to the applicable law. There was no violation of due process under the facts of this case. Further, the letter's interpretation of the law was substantially correct. To the extent, if any, that the State's use of the letter infringed on the trial court's role to instruct the jury as to the law, any error

12

was harmless beyond a reasonable doubt. *See id.* (correct statement of law by prosecutor was harmless beyond a reasonable doubt).

## IV.    The Evidence Is Legally and Factually Sufficient

In her last two points of error, Pardue challenges the legal and factual sufficiency of the evidence. In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In a factual sufficiency review, we review all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006); *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

It is important in this analysis to distinguish a conspiracy from organized criminal activity. *Compare* TEX. PENAL CODE ANN. § 15.02 (Vernon 2003) *with* TEX. PENAL CODE ANN. § 71.02. While a person may be guilty of criminal conspiracy by doing nothing more than agreeing to participate in the conspiracy, the offense of engaging in organized criminal activity requires that "the actor must not only agree to participate but must himself perform some overt act in pursuance of that agreement." *Barber v. State*, 764 S.W.2d 232, 235 (Tex. Crim. App. 1988). The overt act, though,

13

"need not be criminal in itself" and "acts that suffice for party liability--those that encourage, solicit, direct, aid, or attempt to aid the commission of the underlying offense--would also satisfy the overt act element of section 71.02." *Otto v. State*, 95 S.W.3d 282, 284 (Tex. Crim. App. 2003) (footnote omitted); *In re L.A.S.*, 135 S.W.3d 909, 919 (Tex. App.—Fort Worth 2004, no pet.). "[T]o secure a conviction for engaging in organized crime, the State had to prove that the accused 1) 'with intent to establish, maintain, or participate in a combination or in the profits of a combination' and 2) committed or conspired to commit one or more predicate offenses." *Munoz v. State*, 29 S.W.3d 205, 208 (Tex. App.—Amarillo 2000, no pet.) (quoting TEX. PENAL CODE ANN. § 71.02(a)); *see Barber*, 764 S.W.2d at 235.

A combination is defined as "three or more persons who collaborate in carrying on criminal activities . . . ." TEX. PENAL CODE ANN. § 71.01(a).[4] The Texas Court of Criminal Appeals has held, in order to establish participation in a combination, the State must prove "that the appellant intended to 'establish, maintain, or participate in' a group of three or more, in which the members intend to work together in a continuing course of criminal activities." *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex. Crim. App. 1999). A combination requires evidence the members of the combination agreed to act together in this continuing course of activity. *Barber*, 764 S.W.2d at 235; *Renteria v. State*, 199 S.W.3d 499, 504 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *Ledet v. State*, 177 S.W.3d

---

[4]Subsection (a) also provides that the "(1) participants may not know each other's identity; (2) membership in the combination may change from time to time; and (3) participants may stand in a wholesaler-retailer or other arm's-length relationship in illicit distribution operations." TEX. PENAL CODE ANN. § 71.01(a).

213, 219 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *Munoz*, 29 S.W.3d at 208; *see* TEX. PENAL CODE ANN. § 71.01(b). Further, a combination cannot be established by proof of an agreement to jointly commit a single crime. *State v. Mauldin*, 63 S.W.3d 485, 488 (Tex. App.—Tyler 2001, pet. ref'd). "[T]he term 'carrying on criminal activities' likewise implies continuity — something more than a single, ad hoc effort." *Nguyen*, 1 S.W.3d at 697.

### A. The Evidence Of Gambling Promotion Is Sufficient

The evidence is sufficient to support the jury's conclusion that Pardue committed gambling promotion. The State introduced considerable evidence that J.J.'s was a gambling place. Craig Bouse, a police officer with the City of Woodway Police Department, testified concerning his undercover investigation of J.J.'s. Bouse played several of the games at J.J.'s and observed cash being paid to other players. Multiple witnesses testified that J.J.'s would often pay out cash to winning players. Johnnie Wollard and Yetta Harris testified that J.J.'s would give out gift cards, such as Wal-Mart gift cards, as rewards. Wollard testified she had made payouts of over $1,000.00.[5] There was ample testimony that Pardue managed the business and some suggestion that she may have been a part owner of it. Stapleton and Nathan Kelly, a fire marshal for the City of Lacy Lakeview, both testified that Pardue was managing J.J.'s Game Room. Wollard testified that she observed Pardue pay cash to customers who played the games on at least fifty different occasions. According to Wollard, most of the employees did not have keys to remove money from them.

---

[5]J.J.'s had a sign stating that the maximum payout would be $500.00, but Wollard testified they would pay more than that amount to some customers.

Pardue did have keys to the machines and would remove the cash from them. A reasonable juror could have concluded Pardue operated or participated in the earnings of a "gambling place." The evidence Pardue committed gambling promotion is legally sufficient.

As discussed above, the Texas Penal Code contains a defense to prosecution if a person played for noncash merchandise prizes, toys, or novelties that have a wholesale value available from a single play of the game or device of not more than ten times the amount charged to play the game or device once or five dollars, whichever is the lesser amount. *See* TEX. PENAL CODE ANN. §§ 47.01, 47.02. Wollard testified there were a few "trinkets" in the storage area to award as prizes to winners, but Wollard also testified that J.J.'s did not normally give trinkets out to winners. Sharp testified that he never gave out trinkets and did not know where they were stored. Stapleton testified that Pardue told police when they began investigating J.J.'s that she would give out prizes worth more than five dollars, prizes such as bicycles and video cassette recorders.

In addition, there was some evidence that cash payouts were not made. Wollard testified "cashing out" did not necessarily mean a person had won that amount in playing the eight-liners; the person could be "cashing out" unused money which they had put in a machine. However, Dianna Duffy, a customer of J.J.'s, testified she won, on one occasion, twelve times the money she had spent at the business during that trip to the establishment. Denna K. Kaiser, an unlicensed security guard employed by J.J.'s, denied that anyone was ever paid with cash, but testified playback cards were

16

given.[6]  This Court must defer to the jury's findings and may not substantially intrude on the fact-finder's role as the sole judge of the weight and credibility of the witnesses.  *Cain v. State*, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997).  Viewed in a neutral light, the evidence is factually sufficient that Pardue committed the offense of gambling promotion.

**B.      The Evidence of a Combination Is Sufficient**

On appeal, Pardue argues that the State failed to prove the existence of a combination of three or more persons who collaborated in carrying on criminal activities.  Pardue challenges the evidence in two ways.  First, Pardue argues that her employees and the patrons were not members of the combination and that there is insufficient evidence that her employees agreed to participate in the combination.  In the alternative, Pardue argues that the State failed to prove the requisite number of participants in the alleged combination.

The State presented sufficient circumstantial evidence that Pardue's employees agreed to collaborate in carrying out criminal activities.  Because direct evidence is rarely available to prove the existence of an agreement, circumstantial evidence is sufficient and is almost always needed.  *Gonzalez v. State*, 63 S.W.3d 865, 869 (Tex. App.—Houston [14th Dist.] 2001), *aff'd*, 117 S.W.3d 831 (Tex. Crim. App. 2003); *Jarnigan v. State*, 57 S.W.3d 76, 87 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd); *Mauldin*, 63 S.W.3d at 489.  The employees were aware of the letter that Pardue

---

[6]Giving playback cards is illegal if the playback tickets can be redeemed for cash to play another machine.  *See* TEX. PENAL CODE ANN. § 47.01(4)(A); *Hardy*, 102 S.W.3d at 132.  Multiple customers testified they would often receive playback cards.

17

had received from the district attorney's office. After receiving the letter, Pardue told her employees that she intended to continue operations and "play it by ear." At various times, J.J.'s ceased operations when other similar establishments in the county were raided. Wollard testified that Pardue instructed her to pay cash only to regular customers and to first obtain permission before paying cash to customers whom Wollard did not know. Wollard also testified she told customers not to ask to be paid in cash when the police were present. Multiple employees testified they would give playback cards only while police were known to be on the premises. Rashi Sharp testified that he gave out playback cards when police were present because he believed that giving out cash to players on the eight-liners was an illegal act. Finally, Pardue promised to pay for an attorney if any of her employees were accused of a crime. Based on this circumstantial evidence, a rational juror could have concluded beyond a reasonable doubt that the employees agreed to work together in a continuing course of criminal activities. Viewed in a light most favorable to the verdict, the evidence is legally sufficient.

In conducting a factual sufficiency review, we must consider the evidence that, according to the appellant, most undermines confidence in the jury's verdict. *Curiel v. State*, 243 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *see Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Pardue argues that the employees worked for Pardue in an apparently-legitimate employee capacity. Because of this arrangement, Pardue argues that the employees could not be

18

members of a combination or participate in the profits of the corporation.[7]  Pardue adamantly and consistently argued that the district attorney's interpretation was incorrect.  Numerous employees testified they did not believe their activities to be illegal or that they believed the law was unclear. Although the relationship between Pardue and her employees appeared to be a formal employment relationship in which the employer determined business policy, such a relationship does not necessarily preclude the existence of an agreement.  Despite receiving instructions from an employer, an employee can still agree to collaborate to commit criminal activities.  An employee must consent to the employment relationship and is still responsible for his or her actions.  The employees chose to remain in the employ of J.J.'s and chose to follow the instructions provided by Pardue.  We are not convinced the contrary evidence is sufficiently strong enough to determine that the jury erred in finding that an agreement existed.  Viewed in a neutral light, the evidence supporting the verdict is not so weak or so outweighed by the great weight and preponderance of the evidence that the jury's verdict  is clearly wrong or manifestly unjust.

While we agree the patrons of J.J.'s were not members of the combination,[8] we disagree that the employees cannot be considered members of the combination.  Wollard testified that J.J.'s employed between six to ten persons at any one time and identified numerous former employees of

---

[7]Pardue contends any wages or profits were expenses of the business rather than any participation in the profits of the combination.  There is some evidence that the bonuses were affected by the employees' performances in operating the gambling establishment.

[8]There is no evidence the customers or patrons collaborated.  Each customer or patron acted individually.

19

J.J.'s. The membership of the combination may change from time to time. TEX. PENAL CODE ANN. § 71.01(a). There is sufficient evidence of a combination of three or more persons who agreed to collaborate in carrying out criminal activities and that Pardue committed gambling promotion. The evidence is both legally and factually sufficient to sustain the verdict.

### C. Corroboration of Accomplice-Witness Testimony

In her reply brief, Pardue raises for the first time the sufficiency of the corroboration of the accomplice witnesses.[9] Pardue argues that if the State is correct that the employees were members of the combination, then the employees were accomplices; ergo, the State had the burden to corroborate their testimony. An accomplice witness is a person who could be convicted of the offense with which the accused is charged. *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006); *Creel v. State*, 754 S.W.2d 205, 213 (Tex. Crim. App. 1988). A conviction cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; the corroboration is not sufficient if it merely shows the commission of the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). The test for weighing the sufficiency of corroborating evidence is to eliminate from consideration the accomplice's testimony, and then examine the remaining testimony and evidence to determine if

---

[9]Issues should not be raised for the first time in a reply brief. TEX. R. APP. P. 38.3; *State v. Sanchez*, 135 S.W.3d 698, 700 (Tex. App.—Dallas 2003), *aff'd*, 138 S.W.3d 324 (Tex. Crim. App. 2004). A reply brief should only respond to the arguments in the Appellee's brief. While we could decline to address issues not properly raised in Pardue's brief, we will address whether there was sufficient corroboration of the accomplice witnesses in the interest of justice.

there is evidence that tends to connect the defendant with the commission of the offense. *Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993); *Hall v. State*, 161 S.W.3d 142, 149 (Tex. App.—Texarkana 2005, pet. ref'd). The nonaccomplice testimony does not have to directly link the accused to the crime, does not have to establish guilt beyond a reasonable doubt, and need not prove all the elements of the alleged offense. *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994); *Munoz*, 853 S.W.2d at 559; *Jeffery v. State*, 169 S.W.3d 439, 448 (Tex. App.—Texarkana 2005, pet. ref'd).

The trial court did not instruct the jury concerning the accomplice-witness rule and it was not requested to do so. "A witness may be an accomplice either as a matter of law or as a matter of fact; the evidence in a case determines what jury instruction, if any, needs to be given." *Cocke*, 201 S.W.3d at 747. Even when the jury is not instructed concerning the accomplice-witness rule, an appellate court will review the sufficiency of the corroboration of an accomplice as a matter of law. *Jeffery*, 169 S.W.3d at 445 n.4; *see Hernandez v. State*, 939 S.W.2d 173, 175 n.2 (Tex. Crim. App. 1997). *But see Green v. State*, 72 S.W.3d 420, 424 (Tex. App.—Texarkana 2002, pet. ref'd) (declining to address corroboration when witness was not an accomplice as a matter of law and there was "no jury finding that she was an accomplice as a matter of fact"); *Reyna v. State*, 22 S.W.3d 655, 660 (Tex. App.—Austin 2000, no pet.) (declining to address whether the corroboration was sufficient when the witness was not an accomplice as a matter of law).

21

Assuming, without deciding, that the employees were accomplices as a matter of law, there is ample corroboration of their testimony. The State introduced nonaccomplice testimony of J.J.'s customers, a payout sheet, and a daily record book containing instructions Pardue gave to employees. In addition, the State introduced the testimony of Stapleton and Kelly, who both verified that Pardue was managing J.J.'s Game Room. The evidence corroborating the testimony of Pardue's employees is sufficient to tend to connect Pardue to the offense.

**Conclusion**

The trial court did not abuse its discretion in concluding the letter was admissible for a limited purpose, and Pardue failed to request a limiting instruction. As such, Pardue cannot complain on appeal about the admission of the letter for all purposes. Further, the letter did not amount to an instruction on the law in violation of due process. The evidence is legally and factually sufficient.

Because the State has withdrawn its opposition, we vacate the trial court's order of forfeiture. We affirm the judgment of the trial court as modified.

Bailey C. Moseley
Justice

Date Submitted:     March 11, 2008
Date Decided:       April 4, 2008

Publish

22