

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-11-00226-CR
_____

### TABOR RYAN PARDEE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 24078

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Tabor Ryan Pardee was convicted by a jury for burglary of a habitation enhanced by a prior felony conviction (*see* TEX. PENAL CODE ANN. § 12.42 (West Supp. 2012), § 30.02 (West 2011)), and sentenced to sixty years' imprisonment. Pardee has appealed.

On appeal, Pardee raises three issues. Pardee's first point of error maintains that the evidence is legally insufficient to sustain his conviction. In his second point of error, Pardee argues the trial court erred in permitting the State, during cross-examination, to use information from billing statements submitted to the court by his first court-appointed investigator and in permitting the State to cross-examine Pardee concerning whether he had subpoenaed certain witnesses. In his final issue, Pardee complains that the trial court erred in its exclusion from evidence of an audio recording of a conversation between Pardee and an alleged drug dealer whom Pardee claimed was the real perpetrator of the crime.

**(1)     The Evidence Is Legally Sufficient**

In  evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in

2

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Our review involves determining "whether the necessary inferences made by the trier of fact are reasonable, based upon the cumulative force of all of the evidence." *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011).

Evidentiary sufficiency is measured against a "hypothetically correct" jury charge which includes (1) allegations that form an integral part of an essential element of the offense, including allegations that are statutorily alternative manner and means and (2) material variances. *Mantooth v. State*, 269 S.W.3d 68, 76 (Tex. App.—Texarkana 2008, no pet.). The State had the burden to establish that Pardee, without effective consent of Toby Kautz, entered Kautz's habitation[1] with the intent to commit theft. TEX. PENAL CODE ANN. § 30.02(a)(1), § 31.03 (West Supp. 2012).

In his claim that the evidence was not legally sufficient, Pardee directs our attention to the absence of any fingerprint evidence presented by the State. According to Pardee, another person had possession of some of the stolen property and the evidence showed another person used the purloined credit card at a store called Choctaw Plaza. Further, Pardee claims he provided a reasonable explanation for the evidence inculpating him, which the State failed to

---

[1]The State is bound by its allegations of statutorily alternative manner and means. *See Gollihar v. State*, 46 S.W.3d 243, 254 (Tex. Crim. App. 2001); *Curry v. State*, 30 S.W.3d 394 (Tex. Crim. App. 2000); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *cf. Geick v. State*, 349 S.W.3d 542, 548 (Tex. Crim. App. 2011) (State bound by alleged statutory definition that narrowed manner and means of theft).

disprove. Although we acknowledge the absence of fingerprint evidence, a rational juror could have disagreed with Pardee's remaining assertions.

It is well established that when a suspect is found in possession of recently-stolen property and he fails to provide a reasonable explanation for his possession of that property, the fact-finder is permitted to draw an inference of guilt. *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006); *Hardesty v. State*, 656 S.W.2d 73, 76–77 (Tex. Crim. App. 1983); *Schnidt v. State*, 357 S.W.3d 845, 851–52 (Tex. App.—Eastland 2012, pet. ref'd); *Uyamadu v. State*, 359 S.W.3d 753, 760 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). However, "[n]o inference of guilt can be raised where police found the stolen property in a place where others have an equal right and facility of access." *Blevins v. State*, 6 S.W.3d 566, 569–70 (Tex. App.—Tyler 1999, pet. ref'd).[2] Whether the explanation provided which is intended to explain the possession of stolen property is reasonable is a question of fact for the jury. *Middleton v. State*, 187 S.W.3d 134, 139 (Tex. App.—Texarkana 2006, no pet.). The record must show that the explanation is either false or unreasonable in order to support a conviction based on the inference of guilt. *Id*. 138–39.

About a month prior to the burglary, Pardee had agreed to sell Kautz (the victim of the burglary) four tires for $100.00. Although Kautz paid Pardee for all four tires, Pardee had delivered only one of the four he possessed at the time the purchase price was paid, despite the

---

[2]We note that *Blevins* also concluded that fingerprints found on the outside of a window used to enter the burglarized dwelling was legally insufficient evidence. *Blevins*, 6 S.W.3d at 570. The Tyler Court relied on *Phelps v. State*, which required evidence "excluding every reasonable hypothesis." 594 S.W.2d 434, 436 (Tex. Crim. App. [Panel Op.] 1980). Since its opinion in *Phelps*, the Texas Court of Criminal Appeals has held that the State is no longer required to exclude every reasonable hypothesis. *Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995). This opinion should not be interpreted as endorsing all conclusions reached in *Blevins*.

4

fact that Kautz made repeated inquiries to Pardee's father regarding the other three tires. On the day of the burglary, Kautz, his wife, and his son had traveled to Dallas to see the Texas-Oklahoma football game[3] and to attend the Texas State Fair. While at the fair, Kautz received a telephone call from Pardee, who said that he wanted to deliver the remaining three tires. Kautz (who knew that Kautz's father was engaged elsewhere and would not be present) testified that he originally told Pardee no one was at the Kautz ranch to receive the tires, but then "storied" and told Pardee that his "hired hand" was there.

Kautz testified that because the ranch and its dwelling were quite remote and because there is normally someone present on the premises, the doors of the residence normally remained unlocked. When they returned home, the Kautz family discovered the following items had been stolen from the house: (1) a Sony Playstation 3; (2) a portable Playstation 2; (3) Playstation games; (4) three rifles, including a "Mini-14" rifle; (5) a ring with a Krugerrand coin mounted in the ring set; (5) a diamond ring; (6) some earrings; and (7) a credit card issued to Kautz. Although the credit card account was Kautz's, the credit card was an extra card he had gotten for his daughter's use. When Kautz called the credit card issuer, he was informed the credit card had been used twice—at Choctaw Plaza and at a Wal-Mart store in nearby Hugo, Oklahoma. On the day after the robbery, Kautz obtained a picture from Wal-Mart of the person who used the credit card and a picture of a white SUV from Choctaw Plaza. Later that day, Kautz confronted Pardee's father, who identified Pardee as the person in the photograph taken at Wal-Mart. Pardee told his father that he received the credit card and some jewelry from someone as

---

[3]The burglary was not the only terrible thing that happened on that day. Tragically, the University of Texas lost this game.

5

payment for some money he was owed. Kautz promised Pardee's father that he would not press charges if Pardee returned the stolen items. Although Pardee returned a rifle, the Playstation 2, and some jewelry, not all of the items were returned.

Pardee testified at trial, denying any participation in the burglary. He further stated that after he had called Kautz about delivering the three tires, he and his girlfriend went to the nearby Choctaw Casino in Oklahoma. While leaving the casino, Pardee testified he ran into Bobby Clinton, whom he characterized as a drug dealer[4] who "had ripped [Pardee] off for $250" in connection with a prior marihuana transaction. Pardee claimed that he received the credit card (which Pardee maintained had no name on it) and some jewelry from Clinton. He testified that Clinton gave him these things to avoid having a scene with Pardee at the casino. Although Pardee admitted using the credit card at Wal-Mart, when the credit card stopped working, Pardee claimed that he assumed that Clinton had ripped him off once again and threw the card away. Pardee testified that he was afraid of Kautz's accusations because he (Pardee) was on parole and feared that accusations of that nature might jeopardize his parole; due to those fears, Pardee testified that he pawned his own possessions to purchase the items he returned to Kautz. Pardee also testified, without objection, that he "called Mr. Clinton and his girlfriend, Brenda, and had made a recording of them about giving me the property."

As noted above, Kautz obtained a photograph of a white SUV at a gas pump at Choctaw Plaza. Investigator Tuttle testified that Pardee had admitted to him that the vehicle was Pardee's

---

[4]Investigator Joe David Tuttle of the Lamar County Sheriff's Department testified Clinton is a known drug dealer and fence in the Arthur City area.

6

mother's white SUV.[5] However, the fuel cap of the SUV in the picture was on the passenger side of the vehicle. Pardee introduced a picture establishing that the fuel cap on Pardee's mother's SUV was on the driver's side. Because of the position of the gas tanks, we agree with Pardee that a rational juror could not have concluded the SUV in the photograph is Pardee's mother's SUV.[6] We disagree with Pardee, however, that this fact alone requires the jury to believe Pardee's testimony in its entirety.

Although the State did not present any direct evidence refuting Pardee's explanation, we believe the State presented sufficient circumstantial evidence[7] for a rational juror to conclude that Pardee's version of the happenings was false or unreasonable. As noted above, Pardee had called Kautz and, in their conversation, learned that Kautz's family would not be home on the day the burglary took place. Pardee admitted that he was attempting to use the credit card at a Wal-Mart in Oklahoma approximately an hour after the telephone conversation with Kautz. This

---

[5]Kautz testified that he personally picked up a photograph from Choctaw Plaza.

[6]As Judge Cochran's concurring opinion in *Brooks* emphasized, the mere existence of some evidence is not sufficient in criminal cases—there must be sufficient evidence for a rational juror to reach a conclusion beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 917. Legal sufficiency is judged not by the quantity of evidence, but by the quality of the evidence and the level of certainty it engenders in the fact-finder's mind. *Id*. at 917–18. In *Brooks*, the Texas Court of Criminal Appeals provided the following hypothetical:

> The store clerk at trial identifies A as the robber. A properly authenticated surveillance videotape of the event clearly shows that B committed the robbery. But, the jury convicts A. It was within the jury's prerogative to believe the convenience store clerk and disregard the video. But based on all the evidence the jury's finding of guilt is not a rational finding.

*Brooks*, 323 S.W.3d at 907 (quoting *Johnson*, 23 S.W.3d at 15 (McCormick, P.J., dissenting)). Similar to the above hypothetical, a conclusion that the SUV in the picture was Pardee's mother's is not rational. However, that does not mean that a rational juror could not have found Pardee guilty of burglary beyond a reasonable doubt.

[7]The falsity of an explanation may be shown by circumstantial evidence. *Callahan v. State*, 502 S.W.2d 3, 7 (Tex. Crim. App. 1973); *Middleton*, 187 S.W.3d at 139.

7

admission was corroborated by two different security camera photographs of Pardee and a photograph of Pardee's mother's SUV parked in the Wal-Mart parking lot. Investigator Tuttle testified that Pardee and his girlfriend returned "everything but the credit card and two pieces of jewelry and a gun" the day after the robbery. Such a prompt return of the property would be surprising since Pardee claimed that a drug dealer who had a history of shortchanging him had possession of the property. During cross-examination, the State elicited some responses from Pardee concerning Michael Rosson that were inconsistent with his testimony on direct examination. Pardee admitted that he had begun using methamphetamine at the age of "13 or 14"[8] and admitted, during the guilt/innocence phase of the trial, to having eighteen prior convictions.[9] A rational juror could have reasonably concluded Pardee's explanation was false or unreasonable. The evidence is legally sufficient.

**(2)      The Trial Court Did Not Abuse Its Discretion Under Rule 403 in Allowing the State's Use of Pardee's Investigator's Bills**

Pardee complains in his second issue about the State using references to Pardee's investigator's billing statements to cross-examine Pardee. Pardee argues before us that (1) the attorney-client and work product privileges prohibit such cross-examination, and (2) the probative value was substantially outweighed by unfair prejudice.

---

[8]We note Pardee testified he had stopped using methamphetamine "before I went to prison in 2007" and has not used drugs since his release.

[9]Pardee did not object to the admission of evidence concerning his prior convictions or request a limiting instruction.

8

While Pardee's privilege arguments may well be correct,[10] they have not been preserved for our review. To preserve a complaint for appellate review, the record must establish (1) that the complaint was made to the trial court by a request, objection, or motion that was timely and sufficiently specific to make the trial court aware of the grounds of the complaint and (2) that the trial court ruled adversely. TEX. R. APP. P. 33.1; *Pardue v. State*, 252 S.W.3d 690, 698–99 (Tex. App.—Texarkana 2008, no pet.). A party's failure to employ "magic words" will not preclude error preservation if the party's complaint is sufficient to make the trial court aware of the grounds of the complaint. *Pardue*, 252 S.W.3d at 699. Considering that requires us to examine the exchange which occurred at trial, this being as follows:

> [State]: . . . . I want you to show me, on these bills presented by your investigator where they've been itemized --
>
> [Defense]: Your Honor, I'm going to object. The bills are prepared by the investigator, by the way, who I did not employ. I haven't been representing this man but about three weeks. It [is] purely prejudicial. Has nothing to do with --
>
> THE COURT: I'm going to sustain the objection.

---

[10]The State argues Texas does not recognize a private investigator-client privilege, citing *Landry v. Burge*, No. 05-99-01217-CV, 2000 Tex. App. LEXIS 6606 (Tex. App.—Dallas Oct. 2, 2000, no pet.) (not designated for publication). We disagree that this case supports the State's position. The holding of the Dallas Court of Appeals was very narrow—that the identity of the client was not protected. *Id.* While the court did note the Texas Rules of Evidence do not recognize a private investigator-client privilege, the court suggested that the attorney-client privilege might apply when an investigator is employed pursuant to an attorney-client relationship. *Id.* The Texas Court of Criminal Appeals has explicitly held "the scope of the attorney-client privilege encompasses agents whose services are required by the attorney in order to properly prepare his client's case." *Ballew v. State*, 640 S.W.2d 237, 239–40 (Tex. Crim. App. [Panel Op.] 1980) (concluding privilege can be waived); *see* TEX. R. EVID. 503 (privilege applies to "representative of the lawyer"); *IMC Fertilizer, Inc. v. O'Neill*, 846 S.W.2d 590, 592 (Tex. App.—Houston [14th Dist.] 1993, no pet.) (investigator who was representative of attorney covered by privilege). In this case, the investigator was clearly acting as the agent of Pardee's attorney. Because the privilege issue has not been preserved for our review, it is not necessary for us to decide the extent of protection afforded to the investigator by the attorney-client and work product privileges. This opinion should not be interpreted as suggesting that these bills are not protected by the attorney-client and/or work product privilege. We are not addressing the privilege issue on the merits.

[State]: He's saying Clinton Bell was contacted and I believe I can prove that nobody's made an effort, at all, to contact Clinton Bell -- I'm sorry, Bobby Clinton.

Judge, if their position is Bobby Clinton did this, I think I can attack his credibility on the fact that no one, including this defendant, his family, his lawyer, his investigator, had made no effort whatsoever to contact Bobby Clinton.

THE COURT: I'll let you introduce the bills for that.

We note that Pardee's brief before us concedes that his trial counsel "did not use the exact terminology of privilege." The defense's sole objections at trial were (1) the fact that the first investigator had not been employed by Pardee's second appointed counsel,[11] and (2) undue prejudice. Neither of these objections was sufficient to make the trial court aware that the defense was claiming the attorney-client privilege or the work product privilege. An appellant's argument on appeal "must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). This issue has not been preserved for appellate review. TEX. R. APP. P. 33.1.

Pardee's remaining argument (i.e., his argument that the trial court abused its discretion under TEX. R. EVID. 403) is preserved for appellate review. We note the State argues error has not been preserved because the trial court initially sustained Pardee's objection. The State argues that Pardee failed to pursue the objection to an adverse ruling. Had that ruling remained in force, the State would have been correct. However, after the trial court made its initial ruling, the State then convinced the trial court to reverse course on the ruling and permit the introduction of the evidence. As a consequence, although the trial court's initial ruling was not adverse, the

---

[11]The record indicates that two attorneys and two investigators had been appointed by the court. The record indicates that Pardee's first counsel was permitted to withdraw. Pardee testified he never talked with the first investigator. The record does not indicate why a second investigator was appointed.

trial court's second ruling was adverse to Pardee and error has been preserved—at least to the extent that the evidence may have been introduced.[12]

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). A trial court does not abuse its discretion so long as the decision to admit evidence is within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). An appeals court may not substitute its own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

Evidence may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. TEX. R. EVID. 403; *Mozon v. State*, 991 S.W.2d 841, 846–47 (Tex. Crim. App. 1999). In conducting a Rule 403 balancing test, a trial court should consider the following factors: (a) the probative value of the evidence; (b) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (c) the time the proponent needs to develop the evidence; and (d) the proponent's need for the evidence. *Shuffield v. State*, 189 S.W.3d 782 (Tex. Crim. App. 2006). Rule 403's balancing test carries a presumption that relevant evidence will be more probative

---

[12]We note, though, that there is no indication in the evidence that the billing statements were actually introduced into evidence. The State, however, continued to cross-examine Pardee about the failure to investigate Clinton and Clinton's associates.

11

than prejudicial. *See Rayford v. State*, 125 S.W.3d 521, 529 (Tex. Crim. App. 2003); *Williams v. State*, 958 S.W.2d 186, 196 (Tex. Crim. App. 1997).

In the face of the objection which was lodged, the trial court did not abuse its discretion. "Unfair prejudice" is not established merely because the evidence injures the opponent's case. *Rogers v. State*, 991 S.W.2d 263 (Tex. Crim. App. 1999). Evidence is unfairly prejudicial when it has an undue tendency to suggest that a decision be made on an improper basis, commonly, but not necessarily, an emotional one. *See Mozon*, 991 S.W.2d at 847 n.7. "Evidence might be unfairly prejudicial if, for example, it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence." *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). This case does not present evidence that has any tendency to suggest that a decision be made on some improper basis such as sympathy or emotion. A definition of "prejudice" is "to injure or damage by some . . . action." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 979 (11th ed. 2006). Under that definition, almost any evidence which were to damage Pardee's case could be said to prejudice it. While the evidence may have been prejudicial, it was not unfairly prejudicial. The trial court did not abuse its discretion in overruling Pardee's Rule 403 objection.

**(3)     The State's Subpoena Questions Were Not Argumentative**

Additionally, Pardee complains in his second issue that the trial court permitted the State to question him concerning the failure to subpoena Rosson or Clinton. Pardee now complains that these questions violated the attorney-client and work product privileges. Because Pardee did not make any objection to the trial court based on these privileges, any error on that basis has not

12

been preserved for our review. TEX. R. APP. P. 33.1. No objection was made to most of the State's questions. As such, any error concerning these questions has also not been preserved for appellate review. *Id*.

The record, though, does contain one preserved objection. Pardee argues that the trial court erred in overruling an argumentative objection.[13] At trial, the following exchange occurred:

> Q. [State] Well, he's your friend. Why would he even need to be subpoenaed? If he's your friend --
>
> A. [Pardee] He probably ain't going to come.
>
> Q. -- that can clear you --
>
> [Defense Counsel]: Your Honor, this is purely argumentative.
>
> [State]: Judge, it goes to this man's credibility and the lies that he's making.
>
> THE COURT: Overruled.

In support of his argument, Pardee cites the very old cases of *Townsley v. State*, 281 S.W. 1054 (Tex. Crim. App. 1926), and *Houston & T.C.R. Co. v. Johnson*, 118 S.W. 1150 (Tex. Civ. App. 1909). We note both of these cases were decided based on the common law (which was in force

---

[13]The State's brief does not address the "argumentative" objection. The State argues it is permitted to comment on Pardee's failure to produce witnesses and evidence so long as the remark does not fault the defendant for exercising his right not to testify, citing *Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000), *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995), and *Harris v. State*, 122 S.W.3d 871, 884 (Tex. App.—Fort Worth 2003, pet. ref'd). Pardee argues the State's comments were improper because they shifted the burden of proof. We note the prosecutor's comment cannot impermissibly shift the burden of proof to the defendant. *See Jackson*, 17 S.W.3d at 674; *Whiting v. State*, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990). It is not necessary for us to decide whether the State's comments shifted the burden of proof. *Jackson*, *Patrick*, and *Harris* all concerned whether a prosecutor's closing arguments were proper and do not authorize the prosecution to introduce evidence concerning the defense's decisions of which witnesses to subpoena. All three cases are clearly distinguishable from this case.

13

prior to the adoption of the Texas Rules of Evidence). Objections to evidence are now governed by the Texas Rules of Evidence instead of the common law. Pardee has failed to cite any authority supporting his argument based on the Texas Rules of Evidence.

Many common law objections—including the objection of "argumentative"—are incorporated in the Texas Rules of Evidence. The common law argumentative objection is now governed by TEX. R. EVID. 611 which concerns the mode of interrogation and presentation. The argumentative objection is an objection commonly used, but not commonly understood. Pardee argues the objection should have been sustained because the State was "arguing" with the defendant. Argumentative, though, does not concern counsel's demeanor or tone. Professors Wellborn, Goode, and Sharlot explain the argumentative objection as follows:

> Counsel may not, in the guise of asking a question, make a jury argument or attempt to summarize, draw inferences from, or comment on the evidence. In addition, questions that ask a witness to testify as to his own credibility are improper.

2A Steven Goode, et al., *Texas Practice Series: Courtroom Handbook on Texas Evidence* § 611 cmt. 12 (2012); *see United States v. Yakobowicz*, 427 F.3d 144, 151 (2d Cir. N.Y. 2005) (defining argumentative as "summation-like remarks by counsel during the presentation of evidence"); *accord Eddlemon v. State*, 591 S.W.2d 847, 851 (Tex. Crim. App. [Panel Op.] 1979) (trial court did not abuse discretion in finding the question, "You don't believe your own offense report?" argumentative). In other words, an argumentative objection concerns whether counsel is attempting to "argue" the case, not whether the counsel is "arguing" with the witness.[14]

---

[14]We note that the Rules also prohibit repetitious and harassing questions. The only objection made to the question, though, was argumentative. Thus, our analysis is confined to whether the question was argumentative.

14

The objection was not to an attempt to summarize the evidence or to ask a witness to testify as to his own credibility. Reasonable persons could disagree, though, concerning whether the question was a comment on the evidence. One could argue that the question reeks with sarcasm, indicating that the State's intent was not to discover the answer to the question, but, rather, to make a comment on the believability of Pardee's story. This interpretation is bolstered by the State's later comment that "it goes to this man's credibility and the lies that he's making." On the other hand, one also could argue that the question does not make any explicit comment and does make an attempt to elicit information. Any comment must be inferred and the appellate record does not indicate the tone or demeanor of the question. Because reasonable persons can disagree concerning whether this objection was a comment on the evidence, we are unwilling to conclude the trial court abused its discretion in overruling the objection. Pardee's second issue is overruled.

**(4)     The Tape Recording Was Hearsay and Pardee Failed to Preserve the Issue of Whether a Hearsay Exception Applied**

In his final issue, Pardee argues that the trial court erred in its exclusion of an audio recording of a conversation which took place between Pardee and Clinton. Pardee alleges that this recording establishes that Clinton was Pardee's source of Kautz's credit card; Pardee alleges a bill of exceptions was made.[15] At trial, Pardee's trial counsel made the following response to the State's objection to the introduction of the recording:

---

[15]The appellate record does not contain a formal bill of exceptions although Pardee announced an intent to make one. *See* TEX. R. EVID. 103; TEX. R. APP. P. 33.1(a); *Love v. State*, 861 S.W.2d 899, 901 (Tex. Crim. App. 1993). We note that Pardee's statements on the record may be sufficient to qualify as an informal offer of proof. Because Pardee did not preserve his hearsay exception argument and because the trial court did not err in overruling the

15

[Defense]: Your Honor, I'm not offering it for the truth of the matter asserted. I'm just offering that there was a telephone call made.

. . . .

[Defense]: We are offering it, Your Honor. He made the recording for the whole purpose of trying to prove he didn't do it.

The trial court sustained the State's objection, concluding, "I think it's hearsay."

On appeal, Pardee argues that the recording is a statement against interest (made by Clinton), which is a hearsay exception. *See* TEX. R. EVID. 803(24). Pardee does not argue that the statement falls within any of the hearsay exclusions or that it contains statements which are not hearsay, contained in Rule 801(e). *See* TEX. R. EVID. 801. Because Pardee's sole argument at trial was that the recording was not hearsay,[16] Pardee's hearsay exception argument has not been preserved for appellate review. TEX. R. APP. P. 33.1; *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) ("The proponent, if he is the losing party on appeal, must have told the judge why the evidence was admissible.").

To the extent that Pardee's hearsay exception argument on appeal can be construed as arguing the recording was not hearsay, the argument is incorrect. A statement is hearsay if it is one "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). Under the facts of this case, the existence of a recording would not serve any purpose to the defense. Since Clinton did

---

State's hearsay objection, it is not necessary for us to decide whether the statements of Pardee's counsel are sufficient to be an informal offer of proof. We will assume Pardee's statements are sufficient to qualify as an informal offer of proof.

[16]We emphasize that hearsay exceptions are still hearsay—just hearsay statements that are admissible.

not testify, the recording could not be used for impeachment or other permissible purpose. The recording would only aid the defense if it was used to prove the truth of the matter asserted. Pardee announced that his intent in introducing the recording was to "prove he didn't do it." By this admission, Pardee admitted the recording was being used to prove the truth of the matter asserted. The trial court did not abuse its discretion in sustaining the State's hearsay objection.

**(5) Conclusion**

We conclude that the State presented sufficient circumstantial evidence for a rational juror to disbelieve Pardee's explanation for his possession of the stolen goods. The trial court did not abuse its discretion in overruling Pardee's Rule 403 objection to the State's use of billing statements submitted to the court by his first court-appointed investigator and Pardee's remaining complaints have not been preserved. The only preserved complaint to the State's questions on subpoenas was whether the questions were argumentative. Because reasonable persons could disagree, the trial court did not abuse its discretion in apparently concluding that the questions were not argumentative. Finally, the trial court correctly concluded that the recording of a conversation between Pardee and the alleged drug dealer was hearsay and Pardee failed to preserve any argument that a hearsay exception should apply.

For the reasons stated, we affirm the judgment of the trial court.


                                        Bailey C. Moseley
                                        Justice

Date Submitted:      August 13, 2012
Date Decided:        August 16, 2012

Do Not Publish